IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs in Knoxville October 24, 2012

**STATE OF TENNESSEE v. JIM GEORGE CONASER**

**Appeal from the Criminal Court for Davidson County**
**No. 2010-C-2027      Cheryl A. Blackburn, Judge**

**No. M2012-00304-CCA-R3-CD - Filed March 28, 2013**

The Defendant, Jim George Conaser, contends (1) that the evidence presented at trial was insufficient to support his conviction for harassment and (2) that the trial court's imposition of consecutive sentencing was improper. After a review of the record and the applicable authorities, we conclude that the evidence is sufficient to support the Defendant's harassment conviction and that the trial court did not abuse its discretion in ordering the sentence from that conviction to run consecutively to a prior, unserved sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Joshua L. Brand, Nashville, Tennessee, for the appellant, Jim George Conaser.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; Victor S. Johnson, III., District Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

The Defendant was indicted on August 3, 2010, for harassment. The indictment alleged that the Defendant intentionally placed one or more telephone calls between March 10, 2010, and May 6, 2010, in an offensively repetitious manner and by this action knowingly

alarmed the victim, A.W.[1]

Trial was held on November 14, 2011. A.W. testified that she was employed at Park Center as a Homeless Outreach Counselor. She stated that her position required her to assist homeless people acquire basic provisions, direct them to different resources, and transport them to various appointments. A.W. said that the homeless people she assisted did not become clients, per se; they just called her on the work cell phone number listed on her business card when they needed something. A.W. testified that she met the Defendant in 2008 when she was employed as a case manager for Park Center. She was the Defendant's case manager for approximately six to seven months in 2008. In 2009, A.W. was transferred to her counselor position and had no contact with the Defendant until she ran into him in January 2010 at Kent and Carol's, a community care fellowship center. A.W. was at Kent and Carol's to meet with someone else when she ran into the Defendant; he asked her "for some long johns and a blanket" and gave her his cell phone number. After she went back to her office and located the blanket and long johns, she called the Defendant to let him know that she would bring the items back to him at the center. A.W. testified that she saved the Defendant's number under his name and that she gave the Defendant her business card containing her business cell phone number so that he could contact her if he needed anything else.

A.W. testified that, between January and March of 2010, the Defendant only placed legitimate calls to her cell phone but that the harassment began in March. She testified that the Defendant's calls were sexually inappropriate, that he would call at all hours of the day, and that he would leave sexually threatening and inappropriate messages on her voice mail when the phone was turned off. A.W. described the calls as "possibly masturbation. There was a lot of groaning and . . . he would say that he wanted to bend me over backwards[,] and they got much more detailed than that." She explained that she knew the caller was the Defendant because she recognized his voice and had his number saved in her phone. A.W. stated that toward the end of the harassment, the Defendant started calling her from a private number, and on one occasion, she "answered it and it was him and [she] told him that he needed to stop calling [her] and leaving [her] inappropriate messages." A.W. testified that she eventually told her supervisor, Corey Gephart, about the calls and let Ms. Gephart hear the harassing voice mails. A.W. said that Ms. Gephart encouraged her to contact the Defendant and that she took Ms. Gephart's advice. A.W. said, "a couple of weeks later . . . I called him and I told him to stop calling me and leaving me these messages and that if he didn't then I was going to report it." According to A.W., the Defendant was "somewhat defensive because he didn't think he was doing anything wrong." She contacted the police the following week.

---

[1] Due to the sexual nature of the harassment, we refer to the victim by her initials.

On cross-examination, A.W. testified that the Defendant was diagnosed with depression, alcohol dependence, and a personality disorder. She described him as mid-functioning but stated that he seemed to understand most of the time. A.W. stated that she did not recall the Defendant ever making any inappropriate comments while she was managing his case in 2008. She admitted that not all of the calls involved talking because they contained primarily groans but stated that those calls came from the Defendant's phone number. A.W. also admitted that there was no paperwork linking the Defendant to the phone and that she did not know whether he shared it with anyone else.

Ms. Gephart testified that she was A.W.'s supervisor with the Homeless Outreach Program in 2010 and that she had listened to some of the messages the Defendant left on A.W.'s voice mail. According to Ms. Gephart, the voice mails contained the following statements: "talked about a ten inch cock, he talked about bending her over, he talked about her private areas . . . but he used a word that starts with P." She also stated that there was "a lot of what sounded like masturbation, a lot of like swishing and just noises . . . graphic, very sexual graphic, inappropriate." Ms. Gephart testified that she listened to approximately five or six messages and that she was very uncomfortable. She also testified that A.W. was very upset about the messages and that she told A.W. to give the Defendant an ultimatum and tell him to "stop doing this or we are going to contact the police." Ms. Gephart stated that A.W. took her advice and that the following weekend the Defendant left several "disturbing" messages on A.W.'s voice mail. She told A.W. that the next step was to contact the police.

On cross-examination, Ms. Gephart admitted that she had never personally worked with the Defendant and that she was not present when A.W. told the Defendant to stop calling her.

Lauren Russell testified that she was the Sort Outreach Coordinator at Park Center and that she worked with both A.W. and Ms. Gephart in 2010. Ms. Russell testified that she heard the messages left on A.W.'s phone and described them as "very verbally inappropriate [and] sexually graphically inappropriate messages." She further testified that the messages made A.W. anxious, worried, and disturbed. On cross-examination, Ms. Russell also admitted that she had never personally worked with the Defendant and that she did not recall being present when A.W. told the Defendant to stop calling her.

David Zoccola testified that he was a criminal investigator with the District Attorney's office and that he had previously worked with the Metro Police Department for thirty-two years. He further testified that he had gone through A.W.'s phone records and examined them for communications from the number the Defendant gave A.W. Investigator Zoccola compiled a list of those communications, which was presented to the jury.

In his defense, the Defendant presented the testimony of Jaquisha Sloan. She testified that the Defendant was her uncle and that he had come to stay with her in 2008 after being hit by a car. Ms. Sloan testified that while the Defendant was living with her, she met his case worker, A.W. According to Ms. Sloan, A.W. would come to visit daily or every other day, except weekends, and that this went on for a few months. She described their interaction as very unprofessional, explaining that "[t]here was a lot of things that went on that probably shouldn't have." Ms. Sloan further explained that there were daily phone calls between the Defendant and A.W., some were just asking A.W. "how her day was going and then other times it was some sexual conversations." She testified that she also heard the Defendant make inappropriate comments to A.W. in person and that A.W. just "brushed it off." Ms. Sloan further testified that the Defendant seemed to have multiple personalities and that it varied from day to day; he had also made sexually derogatory comments towards her.

On cross-examination, Ms. Sloan admitted that she could only hear one side of the phone conversations between the Defendant and A.W. She explained that she found A.W. to be unprofessional because A.W. did not correct the Defendant and because A.W. came over "after hours," potentially misleading the Defendant. Ms. Sloan admitted that some of the statements that she heard the Defendant say to A.W. in 2008 were similar to the statements A.W. testified that the Defendant made during the harassing phone calls at issue in this case. She also admitted that she had two previous convictions for theft.

A.W. was recalled to testify in rebuttal. She testified that she did not recall the Defendant making sexual comments to her face or on the phone back in 2008 when she was his case manager. A.W. further testified that if the Defendant had made such statements back in 2008, she would have reported it to her supervisor and advised the Defendant that it was inappropriate. On cross-examination, she testified that the latest she ever came to visit the Defendant in 2008 was at 5:00 p.m.

Ms. Gephart and Ms. Russell were also recalled to testify in rebuttal, and both testified that A.W. had a reputation for being truthful and setting good boundaries. Ms. Gephart also testified that A.W. was voted "Employee of the Year" two years in a row.

The jury convicted the Defendant of harassment.

On January 4, 2012, the Defendant's sentencing hearing was held. After considering the arguments of counsel, the trial court noted that it was considering the following in determining the Defendant's sentence: the evidence presented in a previous trial held before the trial court; the evidence presented in the instant trial; the "felony sentencing considerations"; the Defendant's previous failure to comply with conditions of a sentence

-4-

involving release into the community; and the Defendant's criminal history, consisting of forty misdemeanor convictions and at least three felony convictions. The trial court then sentenced the Defendant to serve eleven months and twenty-nine days and noted that the remaining issue was whether to impose consecutive or concurrent sentencing; the Defendant had recently been convicted of two counts of violating the sex offender registration requirement and had been sentenced to serve an aggregate eight-year sentence as a result of those convictions. After reviewing the sentencing considerations, the trial court found that the Defendant had an extensive criminal history and explained, "there [i]s no reason for me to believe that he's going to change his behavior. The aggregate term reasonably relates to the severity of the offenses, and it's necessary to protect the public from further serious conduct by him. He continues to break the law. So I'm going to sentence him consecutive to his other case."

The Defendant filed a timely notice of appeal.


ANALYSIS

The Defendant contends (1) that the evidence presented at trial was insufficient to support his conviction for harassment and (2) that the trial court's imposition of consecutive sentencing was improper. The State responds (1) that the proof at trial "overwhelmingly" established the Defendant's guilt and (2) that the Defendant's criminal record alone supports the trial court's imposition of consecutive sentencing.


*A. Sufficiency of the Evidence*

The Defendant challenges the sufficiency of the evidence supporting his harassment conviction, alleging that the evidence presented at trial established that A.W. had allowed similar, inappropriate comments made by the Defendant to continue, without correction. According to the Defendant, this "permissive backdrop," created by A.W., rendered the Defendant incapable of knowing that the communications at issue annoyed or alarmed her. The State responds that the jury disregarded the Defendant's witness who averred that A.W. had created this "permissive backdrop" and that, regardless of this allegation, the Defendant's continued communication despite A.W.'s testimony that she requested on two occasions that he stop was sufficient evidence to support the conviction.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the

-5-

crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of proof is the same, whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

As relevant to the instant case, a person is guilty of harassment who "intentionally . . . places one (1) or more telephone calls anonymously, or at an hour or hours known to be inconvenient to the victim, or in an offensively repetitive manner, or without a legitimate purpose of communication, and by this action knowingly annoys or alarms the recipient. Tenn. Code Ann. § 39-17-308. (emphasis added)

In a light most favorable to the State, the evidence presented at trial showed that the Defendant gave A.W. his phone number in January 2010 so that she could assist him in getting access to necessary resources, and A.W. saved the Defendant's number. That number began calling A.W. and leaving sexually inappropriate messages in March 2010. A.W. recognized the Defendant's voice in the messages. She asked him to stop leaving the messages, but he continued. A.W. reported this behavior to her supervisor, Ms. Gephart, who suggested that she contact the Defendant and inform him that she would contact the police if he did not stop calling her and leaving sexually inappropriate messages; A.W. followed this advice. The calls and messages continued, so A.W. contacted the police. A.W.'s supervisor testified that the calls were graphic and sexually inappropriate and that the calls and voice mails upset A.W. A coworker, Ms. Russell, also testified that the messages were very sexually inappropriate and that they made A.W. anxious, worried, and disturbed.

Therefore, we conclude that there was sufficient evidence for the jury to conclude that the Defendant was the person intentionally calling A.W. and leaving harassing messages in an offensively repetitious manner and by this action alarmed her. The Defendant is not entitled to relief on this issue.

*B. Consecutive Sentencing*

The Defendant contends that the trial court abused its discretion by ordering his current misdemeanor sentence to run consecutively to his prior eight-year sentence. He explains that the aggregate nine-year sentence is not reasonably related to the severity of the offenses and is not the least severe measure to achieve the purposes for which the sentence was imposed. The State responds that the trial court's explicit finding that the Defendant had an extensive criminal history is sufficient to support the imposition of consecutive sentencing.

The standard of review for consecutive sentencing is de novo with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d)(2010). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

Tennessee Code Annotated section 40-35-115 (b) provides that, when a defendant is convicted of more than one offense, a court may order the sentences to run consecutively if the court finds by the preponderance of the evidence that one of the following circumstances apply:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Rule 32 (b)(2) governs the imposition of consecutive sentencing involving a prior sentence. It provides,

(2) Prior Sentence Not Fully Served.

(A) Prior Tennessee Sentence.

(i) Prior Tennessee Sentence Known. If the defendant has additional sentences not yet fully served as the result of convictions in the same court or in other courts of Tennessee and if this fact is made known to the court prior to sentencing, the court shall recite this fact in the judgment setting sentence, and the sentence imposed is deemed to be concurrent with the prior sentence or sentences, unless it affirmatively appears that the new sentence being imposed is to be served consecutively to the prior sentence or sentences. The judgment to make the sentences consecutive or concurrent shall explicitly relate the judge's reasons and is reviewable on appeal.

Tenn. R. Crim. P. 32(b)(2)(A)(i). In the instant case, the trial judge noted its reasons for imposing consecutive sentencing: the Defendant's extensive criminal history, one of the factors enumerated in Tennessee Code Annotated section 40-35-115 (b), and the need to protect the public from further criminal activity by the Defendant. The trial court also found that an aggregate nine-year term was reasonably related to the seriousness of the offense, and the record does not preponderate against its findings. Therefore, the trial court's imposition of consecutive sentences based on the Defendant's extensive record of criminal activity and the need to protect the public from the Defendant was not improper. See Tenn. Code Ann. § 40-35-115(b)(2); State v. Samuels, 44 S.W.3d 489, 494 (Tenn. 2001). The Defendant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE